UNITED STATES of America,
Plaintiff-Appellant,

v.

Lispnard T. ALLISON,
Defendant-Appellee.

No. 76–1971.

United States Court of Appeals,
Seventh Circuit.

Argued April 4, 1977.

Decided June 2, 1977.

Richard L. Kieser, U. S. Atty., Fort Wayne, Ind., Richard A. Hanning, Asst. U. S. Atty., Hammond, Ind., for plaintiff-appellant.

John Kappos, Merrillville, Ind., for defendant-appellee.

Before CUMMINGS and TONE, Circuit Judges, and JAMESON, Senior District Judge.*

TONE, Circuit Judge.

The government appeals from a judgment of acquittal following a jury verdict of guilty. We hold that we have jurisdiction over the appeal and reverse with directions to enter a judgment of guilty.

* The Honorable William J. Jameson, Senior District Judge for the District of Montana, is sitting by designation.

The defendant Allison was charged with violating 18 U.S.C. § 1001 by knowingly making a false statement in a matter within the jurisdiction of the Department of Health, Education and Welfare. The alleged false statement, made in claiming reimbursement for expenses from the Department, was that he had paid the Internal Revenue Service $1,350.91.[1]

Allison operated Gary Technological Institute, Inc., which was an authorized and approved vocational trainer and as such a "subcontractor" in a program administered by the Department pursuant to the since repealed Manpower Development and Training Act of 1962, 42 U.S.C. § 2571, *et seq.*, repealed effective June 30, 1974 by Pub.L. No. 93–203 (1973). In carrying out that program the Department entered into an agreement with the Indiana State Board of Vocational and Technical Education, under which the Board, as "contractor," administered and audited the vocational training programs conducted by subcontractors such as Allison. Subcontractors received 100 percent of their actual costs not exceeding the budgeted amount. To obtain reimbursement they submitted, using forms supplied by the Department, monthly reports of the expenditures for which the reimbursement was sought, supported by documents evidencing the expenditures. Allison submitted his reports to the Concentrated Employment Program's Gary office, the local agent for the state Board.

If the items of expenditure were to be documented by cancelled checks, the subcontractor would have to wait until he received his cancelled checks before submitting the claim for reimbursement. To avoid this delay the Board permitted the subcontractor to submit, as documentation in lieu of the cancelled check, a Xerox copy of the check before it was sent to the payee.

On May 29, 1974 Allison signed and submitted an executed form which listed among the items "expended this month"

$1,350.91 and contained the certification "that the above report accurately reflects the expenditures of this project for the periods indicated." The documentation submitted with the form included a Xerox copy of a check dated May 29, 1974 in the amount of $1,350.91 payable to the Internal Revenue Service. In fact, Allison had not expended the $1,350.91 and never did transmit the original of the check in that amount to the payee.

The jury found Allison guilty. The District Court set aside the verdict and entered a judgment of acquittal. Viewing the charge as misrepresentation of an intent to send the check, the court held that it did not amount to a violation of § 1001, because that section applied only to misrepresentations concerning a past event or an existing fact. From this decision the government appeals.

### I.

■ Allison does not question the government's right to appeal under 18 U.S.C. § 3731. Nevertheless, in performance of our duty to satisfy ourselves as to our jurisdiction, we have taken note of *United States v. Martin Linen Supply Co.,* —— U.S. ——, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977), decided by the Supreme Court the day the case at bar was argued orally before us.

In *United States v. Wilson,* 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975), the Court held that the double jeopardy clause does not bar an appeal under § 3731 when the district court dismisses an indictment after a verdict of guilty. The reasoning of the Court's opinion appears applicable whenever the district judge overturns the jury's verdict on a solely legal ground. Nevertheless, the possibility that the recent *Martin Linen Supply* opinion could be read to imply that an appeal may not be taken from a judgment of acquittal entered under Rule 29, Fed.R.Crim.P., after a verdict of

---

1. By agreement the indictment charging a violation of § 1001 was joined for trial with an indictment charging wilful failures to pay FICA withholding tax collected from employees. The judgment of guilty on these charges was not appealed.

guilty makes it appropriate to consider the appealability of the order at bar in light of that opinion.

In *Martin Linen Supply* the Court took note of the venerable rule that "[a] verdict of acquittal . . . could not be reviewed, on error or otherwise, without putting [a defendant] twice in jeopardy . . . ," *id.* at 1354, quoting from *United States v. Ball*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). The cases indicate, however, said the Court, "that what constitutes an 'acquittal' is not to be controlled by the form of the judge's action," and that "[r]ather, we must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." 97 S.Ct. at 1354–55. The Court also recognized that the judge, as well as the jury, can render an acquittal. *Id.* at 1355. Turning to a consideration of Rule 29, Fed.R.Crim.P., the Court noted that if the defendant's motion for acquittal had been granted before the jury retired the double jeopardy clause would have precluded retrial; that Rule 29 was adopted to give the trial judge the maximum opportunity to consider a motion for acquittal and did not contemplate "artificial distinctions" based on the time when the judge ruled on the motion; and that "judgments under Rule 29 are to be treated uniformly." *Id.* at 1356.

Yet throughout this discussion, in referring to the case before it, the Court was careful to recognize that the judgment of acquittal had been entered after a mistrial. Moreover, Mr. Justice Stevens' persuasive argument in his concurring opinion that the legislative history shows Congress did not intend by § 3731 to authorize an appeal from any judgment of acquittal obviously did not win the acceptance of the majority.

More important still is the Court's recognition earlier in the opinion that § 3731 "removed the statutory limitations to appeal" by the government and allows such an appeal whenever the double jeopardy clause

permits. *Id.* at 1353. *United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975), was approvingly cited as holding "that the 'controlling constitutional principle' focuses on prohibitions against multiple trials." *Id.*, quoting from *Wilson*, 420 U.S. at 346, 95 S.Ct. 1013. The Court also said:

"At the heart of this policy is the concern that permitting the sovereign freely to subject the citizen to a second trial for the same offense would arm government with a potent instrument of oppression." 97 S.Ct. at 1353.

We interpret *Martin Linen Supply* as not prohibiting an appeal in the circumstances of the case at bar, where a reversal would not require a retrial or any further proceeding before the entry of a judgment of conviction. The majority's discussion of prior law and its observation on the desirability of uniform treatment of motions under Rule 29 must be read with the earlier unqualified acceptance of the principles announced in *Wilson* and the focus on whether another trial would be necessary. There is reason to distinguish, for purposes of the double jeopardy clause, between a judgment of acquittal following a mistrial and one following a guilty verdict. When the jury has rendered a guilty verdict, no retrial is necessary in the event of a reversal on appeal, and all that remains to formalize the determination by the trier of fact is the entry of judgment on the verdict. Cf. *United States v. Wilson, supra*, 420 U.S. at 345, 95 S.Ct. 1013. Reading *Martin Linen Supply* with *Wilson*, we conclude that we have jurisdiction over the appeal.

## II.

Our analysis of the charge and the evidence offered to support it leads us to disagree with the District Court's result without reaching the question of whether § 1001 covers a misrepresentation of intention. The indictment charged the defendant with having made, not a false statement about intention, but a false statement

about whether he had made an expenditure:

" . . . Lispnard T. Allison state and represent that he had expended to the Internal Revenue Service the sum of . . . $1,350.91 . . . for the employer's share of employee benefits, whereas in truth and in fact as he then well knew, he had not expended the sum of . . . $1,350.91 . . . for the employer's share of employee benefits to the Internal Revenue Service. . . ."

The proof of this allegation had two elements. The form itself, in which Allison certified that an expenditure of $1,350.91 had been made, and the Xerox copy of the check payable to IRS in that amount. This was sufficient to prove the offense unless the requisite specific intent to make a false statement which could ordinarily be inferred from those facts was absent because, as Allison contends, agents of the government had misled him into believing that they expected and would tolerate a misrepresentation of the kind charged. The closest the evidence came to showing such condonation was Allison's testimony that the purpose of allowing documentation by Xerox copy instead of cancelled check was to permit funds of the program to be "encumbered," and that he was told by agents of

the government that he could submit copies of checks to document a claim even if the checks had not been transmitted to the payee. This was contradicted, however, by the testimony of the agent with whom Allison dealt, who gave the more plausible explanation that the purpose was simply to avoid the delay in reimbursement that would result if the subcontractor had to wait for the return of his cancelled checks before filing his claim. If that was the case, Allison was not justified in believing that he was entitled to represent that he had expended money when he had not, yet at least, done so. The jury presumably, and we think not surprisingly, believed the government's version and therefore concluded that the misrepresentation was not invited or condoned by the government but was made with the specific intent which is an essential element of the crime.[2] Thus, as we view the case, it was irrelevant whether Allison intended to send the check to IRS when he submitted the form, so long as he had not in fact done so.[3]

The judgment is reversed and the case is remanded with directions to enter a judgment of guilty on the jury's verdict and to proceed with sentencing.

REVERSED and REMANDED with INSTRUCTIONS.

2. The jury was properly instructed on specific intent. The defendant does not contend otherwise.

3. The closing arguments were not transcribed, but it appears from post-trial memoranda addressed to the District Court and included in the record that the government's position before that court was essentially the one which we have found meritorious in this opinion. The instructions were consistent with our view of the case.