UNITED STATES of America,
Plaintiff-Appellant,

v.

Charles BLASCO and Donald Jennings,
Defendants-Appellees.

No. 77–2027.

United States Court of Appeals,
Seventh Circuit.

Argued April 14, 1978.

Decided Aug. 9, 1978.

Rehearing and Rehearing In Banc
Denied Sept. 12, 1978.

Thomas P. Johnson, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellant.

Jeffrey B. Steinback, Chicago, Ill., for defendants-appellees.

Before PELL, TONE and WOOD, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Defendants-appellants, Chicago police officers Blasco and Jennings, were charged in an eight count indictment with engaging in a pattern of solicitation and acceptance of bribes from narcotics dealers. Count I charged both officers with the misprision of a felony, under 18 U.S.C. § 4, in that they concealed from authorities that Sam Johnson, a/k/a "Fat Sam," possessed heroin for distribution. Count II charged both officers and Count III charged only Jennings with the same offense in connection with other individuals. Counts IV and V charged Jennings with knowing and intentional distribution of heroin and cocaine. Count VI charged Blasco and Count VII charged Jennings with racketeering activity, in violation of 18 U.S.C. § 1962, for soliciting and receiving bribes and distributing drugs. Count VIII charged both officers with conspiring, along with other unindicted co-conspirators, to violate the racketeering provisions.

During the three-week trial the government presented this version of the events to the jury: During 1973–74 the defendants were assigned to the Tactical Unit of the 7th District of the Chicago Police Department. Their duties included investigating and arresting narcotics offenders in this district. During approximately six months of this period, Whitelaw Abrams worked as an informant for the defendants. Abrams was familiar with the narcotics trafficking in the district and was himself a heroin addict. Based on information supplied by Abrams, the defendants were able to stop numerous narcotics offenders. On most of these occasions, the defendants would accept money and/or narcotics in return for releasing these offenders without formally arresting and charging them. The defendants would reward Abrams with money and/or narcotics for the information provided by him. Witness Abrams testified naming the narcotics dealers, including Sam Johnson, who had paid bribes to the officers. Testifying in the government's case were past and present drug addicts and persons of varied criminal backgrounds. The defendants testified in their own behalf denying their guilt, as well as calling approximately fifty witnesses to testify to their good character and reputation.

Following two days of deliberation the jury foreman notified the judge that they were "hopelessly deadlocked." The jury was brought back into court and given the charge recommended by this court in United States v. Silvern, 484 F.2d 879 (7th Cir. 1973). The jury deliberated a few hours thereafter and returned a verdict of guilty as to both defendants on Count I and a verdict of not guilty as to both defendants on the remaining counts. After the court entered judgment on the verdicts, both defendants moved for a judgment of acquittal on Count I notwithstanding the verdict. The court entered a judgment of acquittal on Count I, giving as the reason for its action that the evidence on Count I was neither more credible nor more probative than the evidence on the other counts.

I.

The government seeks to appeal pursuant to 18 U.S.C. § 3731.[1] The defendants argue that the Double Jeopardy clause's aim of protecting the integrity of a final judgment renders the judgment entered in this case binding and non-reviewable, and asks that the appeal be dismissed.

---

1. 18 U.S.C. § 3731 provides:

In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

It has long been the rule that the government cannot appeal in a criminal case without express congressional authorization. In *United States v. Wilson,* 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975), the Supreme Court traced the uneven course of the statutory authority until 1970 when Congress amended the Criminal Appeals Act, and found that when Congress enacted § 3731, it "intended to remove all statutory barriers to Government appeals and to allow appeals whenever the Constitution would permit." 420 U.S. at 337, 95 S.Ct. at 1019. Therefore, unless barred by the Double Jeopardy clause, the appeal here by the government from the judgment of acquittal is authorized by § 3731.

The Seventh Circuit[2] only recently in *United States v. Allison,* 555 F.2d 1385 (7th Cir. 1977), held that the government may appeal from a judgment of acquittal "where a reversal would not require a retrial or any further proceedings before the entry of a judgment." *Id.* at 1387. We feel the correctness of our decision in *Allison* has been reaffirmed by the recent pronouncements of the Supreme Court on 18 U.S.C. § 3731 and the Double Jeopardy clause. *See generally Burks v. United States,* —— U.S. ——, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Sanabria v. United States,* —— U.S. ——, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); *United States v. Scott,* —— U.S. ——, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); and *United States v. Ceccolini,* 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978).

In *Wilson, supra,* later in *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 568–

69, and now just recently in *United States v. Scott, supra,* —— U.S. at ——, 98 S.Ct. at 2191, the Court has stated that the "Double Jeopardy clause was primarily 'directed at the threat of multiple prosecution,' and pose[s] no bar to Government appeal 'where those appeals would not require a new trial.' " The Court in *Scott,* while overruling its decision in *United States v. Jenkins,* 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975), makes clear that the assumption which the government relies on here from *Jenkins,* "a judgment of acquittal [can] be appealed where no retrial would be needed on remand," has not been repudiated.[3] *Scott, supra,* —— U.S. at ——, n. 7, 98 S.Ct. at 2193.

In conclusion we add that we find no support in either *Wilson, supra,* or the recent cases from the Supreme Court cited above, for the contention that while the government may have the right to appeal where the judge's ruling is based on "purely legal considerations," here the ruling was on "solely evidentiary factual considerations"[4] and the government therefore has no right of appeal. The Supreme Court has indicated that the focus of the inquiry in seeking to determine whether the government has the right to appeal where the ruling favorable to the defendant has occurred after a contrary determination by the finder of fact is whether there is any need, if reversed, for further factual findings, i. e., the protection from "multiple prosecutions" purpose of the Double Jeopardy clause. Even the Justices dissenting in *Scott,* while disagreeing with the majority's

---

**2.** Six other circuits have reached the same result we did in the *Allison* decision:

*United States v. Calloway,* 562 F.2d 615 (10th Cir. 1977); *United States v. Cahalane,* 560 F.2d 601 (3rd Cir. 1977); *United States v. Rajas,* 554 F.2d 938 (9th Cir. 1977); *United States v. Donahue,* 539 F.2d 1131 (8th Cir. 1976); *United States v. Burroughs,* 537 F.2d 1156 (4th Cir. 1976); *United States v. De-Garces,* 518 F.2d 1156 (2d Cir. 1975).

*See also United States v. Scott,* —— U.S. at ——, n. 7, 98 S.Ct. 2187.

**3.** The Court in *Scott* held that the Double Jeopardy clause does not preclude appeal by the

government even where further proceedings are necessary if the ruling is reversed, when the trial judge terminated the proceedings favorable to the defendant, on the defendant's motion, before any determination of factual guilt or innocence. —— U.S. at ——, 98 S.Ct. 2187.

**4.** Whether the termination of the proceedings is based on a factual determination of guilt or innocence can be a critical factor in other situations. *See United States v. Scott, supra,* at ——, 98 S.Ct. 2187.

definition of "acquittal,"[5] note that the government is allowed to appeal, under *Wilson,* "whether or not the final judgment was an acquittal . . . if reversal would not necessitate a retrial." *Scott, supra* at ——, 98 S.Ct. at 2201.

We conclude, therefore, that the government's right to appeal under 18 U.S.C. § 3731 depends in the present case upon whether further proceedings upon reversal would be necessary. Inasmuch as the jury returned a guilty verdict against both defendants on Count I, the ruling by the trial judge acquitting both defendants on Count I can be acted upon by this court without subjecting them to a second trial. If the defendant prevails on appeal, the matter will become final. If the defendants lose, the case will go back to the district court for reinstatement of the verdict and for disposition of any remaining motions. Accordingly, we conclude that the Double Jeopardy clause poses no bar in this case and this court has jurisdiction to entertain the appeal of the government.

## II.

In the Memorandum Order granting defendants' motion for acquittal, the district court gave the following reasons for its action:

The assessment of the credibility of the government witnesses, most of whom were persons with criminal backgrounds and past or present drug addicts, was clearly a central issue in this case. It is the opinion of this court that the evidence supportive of the allegations in the only count on which the defendants were found guilty, was neither more nor less probative, nor more nor less credible than the evidence supporting the other counts.

To the extent this statement can be interpreted as indicating that the court based its decision on its own assessment of the credibility of the government witnesses who testified to the incident charged in Count I, the court erred. The rule has long been established that when ruling on a motion for acquittal the test that the court must use is

whether at the time of the motion there was relevant evidence from which the jury could reasonably find [the defendant] guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the Government . . . bear[ing] in mind that "it is the exclusive function .of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences" . . .. (citations omitted.)

*United States v. Rojas,* 554 F.2d 938, 943 (9th Cir. 1977). Our review of the record as to Count I indicates that there was sufficient evidence to convict both the defendants of this charge, if the jury chose to believe the testimony of witnesses, Sam Johnson, Whitelaw Abrams and Gloria de Savieu.[6] The jury was properly instructed as to its role in assessing the credibility of witnesses. Under these circumstances even

---

5. Justices Brennan, White, Marshall and Stevens disapproved of the majority's "new restrictive" definition of a "true acquittal," i. e., "when the ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not of some or all of the factual elements of the offense charged" and its attempt to distinguish such rulings from "other final judgments favorable to the accused." —— U.S. at ——, 98 S.Ct. at 2196.

6. The charge in Count I resulted from a "raid" made by the two officers and Abrams, based on information received from Abrams that Sam Johnson sold him heroin just moments before. After breaking into the house with a sledge hammer, they apprehended a number of individuals inside, including Gloria de Savieu and

Sam Johnson. According to the government's witnesses a conversation followed between the officers, Abrams and Johnson both in the house, and later in the car as to how much money Johnson would have to pay in order to avoid being arrested for possession and distribution of heroin. The officers and Abrams reportedly received approximately $1,000 from Sam Johnson. He was not arrested. The witnesses identified the defendants as the participants in this incident, that Sam Johnson had committed the offense of distributing heroin, that the officers were aware of the offense, and rather than reporting it concealed it in exchange for the payment of a bribe, thereby establishing the essential elements of the crime.

if a judge himself feels a witness is unbelievable, this is not a sufficient basis for granting acquittal.[7] The trial judge should not take upon himself this power of the jury, for "[u]nder our system of jurisprudence a properly instructed jury of citizens decides whether witnesses are credible. The trial judge is deemed to have no special expertise in determining who speaks the truth." (citations and footnote omitted.) *United States v. Cravero,* 530 F.2d 666, 670 (5th Cir. 1976).

To the extent the statement by the district court can be interpreted as saying that the jury returned inconsistent verdicts, we disagree. As we have already indicated, our review of the record indicates that there was sufficient evidence to support each of the elements of the crime of misprision of a felony. In contrast, as the government points out, its proof as to the other counts of the indictment lacked the same quality and quantity as the evidence in Count I.[8] Particularly we note that the crime charged in Count I was testified to by three witnesses, providing corroboration as to some of the essential elements of the charge. On no other count was there corroboration. However, even if we were to view the verdicts as inconsistent, this fact alone cannot serve as the basis for granting an acquittal. *United States v. Reicin,* 497 F.2d 563, 567 (7th Cir. 1974).[9] This is especially true in this case since the purported inconsistency may simply be that the jury believed the government witnesses in certain aspects of their testimony and disbelieved them in others. The jury was instructed that it was entitled to do just that.[10]

For the foregoing reasons, the ruling of the district court entering a judgment of acquittal as to both defendants on Count I is reversed and the case is remanded with instructions to reinstate the jury's verdict.

REVERSED.

---

7. We note that the testimony of the witnesses was not incredible on its face, and thus cannot be said to be incredible as a matter of law. *See United States v. Cravero,* 530 F.2d 666, 670 (5th Cir. 1976).

8. The defendants attach importance to the fact that while the jury found the men guilty of Count I, they were found not guilty on the racketeering counts, and the incident involving "Fat Sam" was part of both counts. However, the law is, and the jury was instructed, that to convict on the racketeering counts, they had to be satisfied that at least *two* of the incidents occurred. Accordingly, the verdicts on the different counts are not necessarily inconsistent.

9. There we had occasion to note in response to a similar allegation that "the defendant fails to take into account the possibility that the jury might have been exercising 'its historic power of lenity' . . . convict[ing] on some counts but acquit[ting] on others, not because they are unconvinced of guilt, but simply because of compassion or compromise." 497 F.2d at 567.

10. The jury was instructed that they "may disregard testimony in whole or in part [of a witness they believed to have sworn falsely to a material fact in the case] except insofar as it may have been corroborated by other credible evidence."