**UNITED STATES of America,
Appellant,**

v.

**Daryls Foster STEED, Appellee.**

**No. 79–5294.**

United States Court of Appeals,
Fourth Circuit.

Argued Aug. 18, 1980.

Decided April 9, 1981.

Rehearing and Rehearing En Banc
Granted July 13, 1981.

John S. Edwards, U. S. Atty., Jean B. Weld, Asst. U. S. Atty., Roanoke, Va., for appellant.

Craig T. Redinger, Charlottesville, Va., for appellee.

Before RUSSELL, WIDENER and PHILLIPS, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

Following a jury verdict finding defendant Daryls Foster Steed guilty on mail fraud and false statement charges, the district court entered judgment of acquittal for insufficiency of evidence. The Government gave notice of appeal under the Criminal Appeals Act of 1970. 18 U.S.C. § 3731 (the Act). We hold that the judgment is appealable under the Act, but, for reasons that follow, affirm the acquittal in deference to the district court's assessment that the evidence was insufficient to convict.

## I

Steed was indicted and put to trial on one count of mail fraud, 18 U.S.C. § 1341, and two counts of furnishing false statements to the Department of Housing and Urban Development in violation of the Interstate Land Sales Act, 15 U.S.C. § 1717. At the close of the Government's case, Steed moved under Fed.R.Crim.P. 29(a) for judgment of acquittal on all three counts. The district court granted the motion as to Count Two but denied it as to Counts One and Three. Upon Steed's renewed motion at the close of all the evidence, the court reserved decision under Fed.R.Crim.P. 29(b), and submitted the case to the jury. After the jury returned a verdict of guilty on the two remaining counts, Steed once again renewed her motion for judgment of acquittal. This time the court granted the motion, setting aside the jury verdict and entering judgment of acquittal on the basis that "no rational finder of fact could have found proof of guilt beyond a reasonable doubt on the evidence that was before the jury at the time." Jt.App.Vol. 4, at 436. From this judgment of acquittal, the government gave notice of appeal.

## II

Initially we confront the jurisdictional question whether the post-verdict judgment of acquittal entered by the district court is appealable.[1] We think that any suggestion of nonappealability is foreclosed—despite an attractiveness we frankly concede—by a proper reading of the Supreme Court decisions interpreting and applying the Act.

In *United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975), the germinal interpretive decision, the question presented was whether the Act allowed appeal by the Government from a judgment of acquittal ordered, following a guilty verdict, because of prejudicial preindictment delay. The Court first held that the Act

---

1. The jurisdictional question was actually raised by the Government which then of course argued in support of jurisdiction.

was intended to relieve the uncertainties spawned by the extant Criminal Appeals Act of 1907 by removing all nonconstitutional bars to government appeals in criminal cases, leaving as the only limitations those that could be found in the Double Jeopardy Clause of the Constitution. *Id.* at 337, 95 S.Ct. at 1018. The appeal-limiting factor in the Clause was then identified as that reflected in its protection against retrial once jeopardy has attached. *Id.* at 342, 95 S.Ct. at 1021. On this basis, the judgment was held appealable. No retrial could be required as a result of the appeal: obviously not, if the defendant prevailed; but neither if reversal were obtained, since in that case the verdict of guilty could be reinstated and judgment entered upon it. *Id.* at 353, 95 S.Ct. at 1026.

While *Wilson* therefore held narrowly only that appeal lay from a post-verdict judgment of acquittal based upon factors not related to factual guilt or innocence, the retrial principle that it identified as the appeal-limiting factor had, at that point, the potential for broader, possibly absolute,

application in both directions: i. e., allowing all appeals that could not result in retrial; disallowing all that could. The aspect disallowing appeal was soon held to be not an absolute one;[2] but the Court has steadfastly continued since *Wilson* to apply and to refer to the aspect allowing appeal where retrial cannot result as an absolute one.[3]

■ Therefore, while the Court has not yet applied the principle specifically to allow appeal from a post-verdict judgment of acquittal based upon insufficiency of evidence, we do not feel free to disregard its apparent commitment to the absolute rule of appealability where retrial could not result. Notwithstanding the resulting anomaly that a judgment of acquittal on this ground remains nonappealable if entered at any time before jury verdict but will be appealable if entered on a reserved basis after verdict, Fed.R.Crim.P. 29(b), we take this as the indicated rule, and accordingly hold that because no retrial would be required as a result of allowing this appeal, we have jurisdiction to entertain it under 18 U.S.C. § 3671.[4]

2. That the *Wilson* principle might operate as an absolute bar to all government appeals that could result in further trial court proceedings was intimated in *United States v. Jenkins*, 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975). There it was held sufficient, standing alone, to preclude appeal from a judgment dismissing an indictment following a full bench trial without regard to whether, as the court of appeals had concluded, the dismissal constituted a fact-based "acquittal." That the principle was not, however, to be given absolute application on this basis was soon decided in *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978). In *Scott* where the Government sought to appeal from a dismissal for preindictment delay at the close of all the evidence, the Court, finding the dismissal appealable, specifically conceded that to the extent *Jenkins* implied an absolute rule of non-appealability if further trial court proceedings might result, it was "wrongly decided." *Id.* at 86–87, 98 S.Ct. at 2191. Instead, appealability of pre-verdict dismissals must take into account the basis of the dismissal and the defendant's role in seeking it. Where, as in *Scott*, a defendant has deliberately sought dismissal on a basis "unrelated to factual guilt or innocence," a government appeal does not offend the Double Jeopardy Clause and hence is allowable under the Criminal Appeals Act. *Id.* at 99, 98 S.Ct. at 2198.

Though it seems certain that the contours of appealability of pre-verdict dismissals under the *Scott* analysis are not yet fully settled given the difficulty of applying the "fact-based acquittal" concept, *see id.* at 110–16, 98 S.Ct. at 2203–06 (Brennan, J., dissenting), the line has been drawn generally on this basis. Certainly *Scott* implies that any pre-verdict dismissal that can clearly be ascribed to a "purely factual" assessment of the insufficiency of evidence to convict of the offense charged is an "acquittal" from which appeal does not lie. Less certain are dismissals having elements of law entwined with the factual assessments, and dismissals based upon such avoidance doctrines as entrapment that lie uneasily on the line between the "factual merits" and matters which, though perhaps "factual," are collateral to the substantive elements of the crime charged. *Id.*

3. *See, e. g., United States v. DiFrancesco,* —— U.S. ——, 101 S.Ct. 426, 433–34, 66 L.Ed.2d 328 (1980); *United States v. Scott,* 437 U.S. at 91 n.7, 98 S.Ct. at 2194 n.7.

4. A number of other circuits have plainly so held, *e. g., United States v. Burns,* 597 F.2d 939 (5th Cir. 1979) (despite district court's effort to shield by dismissing nunc pro tunc); *United States v. Blasco,* 581 F.2d 681 (7th Cir. 1978)

## III

We turn then to review of the district court's post-verdict assessment that the evidence was insufficient to support the conviction. When we look for the standard of review, the immediate impulse is to find it in the established standard where the sufficiency of the evidence is challenged by a defendant: i. e., whether there is substantial evidence, when assessed in the light most favorable to the government, from which any jury might rationally find guilt beyond a reasonable doubt as to every element of the offense charged. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Sherman*, 421 F.2d 198 (4th Cir. 1970) (per curiam).

At first blush, it might seem that this standard should cut both ways, as the comparable standard of review clearly does in civil cases. On that basis we should review, as the Government urges, by freely assessing the evidence under that standard, according no deference to the trial judge's

assessment, and reversing the judgment of acquittal if our independent assessment disagreed with his. Upon reflection, however, we think and here hold for reasons that follow that the established *Sherman* standard for reviewing evidence sufficiency rulings against criminal defendants is not appropriate for reviewing rulings in their favor.[5]

Initially, it is important to emphasize why the question of the appropriate standard is an open one. It was first made possible for all courts by the very legislation that in 1970 newly conferred jurisdiction to entertain government appeals from such post-verdict judgments. Before that, direct appellate review of evidence sufficiency rulings could only be undertaken on defendants' appeals from district court orders denying motions for acquittal. It was only in that limited context therefore, that the *Sherman*-type standard was developed and has since been applied. The question whether it should apply as well in newly

(reaffirming earlier holding); *United States v. Jones*, 580 F.2d 219 (6th Cir. 1978); *United States v. Dreitzler*, 577 F.2d 539 (9th Cir. 1978); *United States v. Donahue*, 539 F.2d 1131 (8th Cir. 1976); *United States v. DeGarces*, 518 F.2d 1156 (2d Cir. 1975) (pre-*Scott*).

This court has once before addressed the question, but with an inconclusive result for our purposes. In *United States v. Burroughs*, 564 F.2d 1111 (4th Cir. 1977) a divided panel of this court held appealable a post-verdict judgment of acquittal entered because of a total failure of proof on what was perceived to be an essential element of the offense charged. The panel majority was at pains however to point out that it considered the appeal to present only a question of law—whether the unproved element was indeed an essential of the offense—and remarked that if such a judgment "represents the resolution of a factual rather than a legal question the government cannot appeal." *Id.* at 1118. Judge Widener dissented, considering that the acquittal was for insufficiency of the evidence and hence, on both his and apparently the majority's view, not appealable. *Id.* at 1119. While *Burroughs* can be variously interpreted, *compare United States v. Blasco*, 581 F.2d at 683 n.2 (*Burroughs* cited as in accord with rule of absolute appealability) *with* 15 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction and Related Matters* § 3919 at 237 n.96.40 (1979 Pocket Part) (cited as not in accord), we think that its suggestion in dictum that appealability might

turn on the fact-law distinction cannot be taken as circuit precedent in view of the Supreme Court's continued intimations that the rule of post-verdict appealability is an absolute one. On this basis we consider our holding today an extension of *Burroughs*' narrow holding that at least with respect to "questions of law" post-verdict judgments of acquittal are appealable.

5. We recognize that this view is at odds with that taken by some—perhaps all—of the circuits that have expressly held post-verdict acquittal judgments appealable. For example, the Fifth Circuit, *see United States v. Burns*, 597 F.2d at 941; the Ninth Circuit, *see United States v. Dreitzler*, 577 F.2d at 545; the Seventh Circuit, *see United States v. Blasco*, 581 F.2d at 684–85; the Eighth Circuit, *see United States v. Donohue*, 531 F.2d at 1135 (semble); and the Second Circuit, *see United States v. DeGarces*, 518 F.2d at 1159, have all proceeded—after finding jurisdiction—to draw upon and apply the traditional standard for reviewing trial court denials of motions to acquit.

This is of course weighty numerical authority against the result we reach. With all respect, we observe of all the decisions that their acceptance of the defendant-appeal standard has apparently been an uncritical one which—at least so far as the opinions reveal—fails to take into account the factors that for us dictate application of a different standard.

authorized government appeals from rulings of evidence insufficiency has not yet been directly addressed either by this court[6] or by the Supreme Court as the latter has been forced to explore the "relatively uncharted ground" opened by the Act. *See* Comment, *Double Jeopardy and Government Appeals in Criminal Cases*, 12 Colum.J.L. & Soc.Prob. 295, 302 (1976). The slate for us is therefore clean so far as binding precedent is concerned.

We believe that the appropriate standard of review is to be found by considering the effect that it will have upon the traditional powers of federal trial judges to protect criminal defendants from the possibility of jury abuses or excesses as an aspect of their broader, historical function of "filtering out deficient prosecutions." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 575, 97 S.Ct. 1349, 1356, 51 L.Ed.2d 642 (1977). Until the 1970 Act, that power had been essentially absolute, since no judge-directed judgment of acquittal for insufficiency of evidence was appealable—whether entered before or after jury verdict and even if based upon an "egregiously erroneous foundation," *Fong Foo v. United States*, 369 U.S. 141, 143, 82 S.Ct. 671, 672, 7 L.Ed.2d 629 (1962); *see also United States v. Sisson*, 399 U.S. 267, 289–90, 90 S.Ct. 2117, 2129, 26 L.Ed.2d 608 (1970). By its continuation of that immunity to any review with respect to pre-verdict fact-based acquittals in the 1970 Act, *see United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *United States v. Sanabria*, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978), Congress presumably intended to continue the traditional protective power unchanged in that context, even while exposing post-verdict acquittals to some degree of appellate review. This gives rise to the anomaly earlier noted in our discussion of the effect of the Double Jeopardy Clause in disallowing appeal in the former and allowing it in the latter context. Because this incident of double jeopardy protection has no apparent

relation to the historical purposes of the protective power, we think that the scope and standard of appellate review should be narrowly drawn to avoid any erosion of the power in the post-verdict setting. By this means, an anomaly that we find difficult to attribute to deliberate Congressional design will be reduced in practical effect and appellate review of post-verdict acquittals made more compatible with what we think was the likely overall intent of Congress.

Of course the only way to maintain the power intact in the post-verdict setting is to accord to trial court assessments of evidence insufficiency the same absolute deference that is provided by the nonappealability of preverdict fact-based acquittals. The resulting standard—nonreview—is, we think, the appropriate one.

To the use of this standard of absolute deference there are two possible objections that justify brief discussion: first, the apparent asymmetry that results from applying different standards to government and defendant appeals; second, the apparent nullification of the government's newly acquired right to appeal post-verdict acquittals. Upon analysis, neither objection has substance.

The asymmetry that results simply reflects the more fundamental asymmetry favoring criminal defendants that pervades our criminal justice system. In the pre-verdict setting the asymmetry in respect of appellate review has of course been total and indeed has provided the structural basis for the trial judge's absolute protective power. For though in technical contemplation the trial judge assesses the sufficiency of the evidence to convict under a *Jackson-Sherman* standard, his rulings favorable to defendants have been wholly unreviewable. Conceptually, the resulting power to acquit might be analyzed as a deliberately conferred absolute power to "err" in applying the standard in favor of

---

**6.** The standard was not in issue in *United States v. Burroughs*, 564 F.2d 1111, because the issue on appeal was treated as one of law

rather than of the sufficiency of evidence. *See* note 4 *supra*.

criminal defendants.[7] On the other hand, he has had no such corresponding power to "err" in favor of the prosecution, precisely because of the defendant's right to force by appeal an independent appellate review of the evidence applying the same legal standard. See Jackson v. Virginia, 443 U.S. at 318 & n.11, 99 S.Ct. at 2789 n.11 (1979). This is simply one incident of a deliberate allocation of evidence assessment functions between trial judge, jury, and appellate court avowedly designed to protect the accused. In the system of checks and balances that has emerged, the power of each entity unilaterally to find factual guilt is at every turn constrained [8] while the power of each unilaterally to acquit is without constraint.[9] This general asymmetry has recently been recognized by the Supreme Court as a fundamental feature of our system of administering criminal justice. In the very course of exploring some of the previously "uncharted ground" opened by the 1970 Act in United States v. Martin Linen Supply, 430 U.S. at 572–73, 97 S.Ct. at 1355, the Court addressed the Government's contention that disallowing government appeal from a pre-verdict fact-based judgment of acquittal gave over to trial judges an evidence assessment function as to which the jury had primacy. Not so, said the Court, for this misperceives the protective roles of both the jury and the trial judge in their evidence assessment functions.

Of course, as the Government argues, in a jury trial the primary finders of fact are the jurors. Their overriding responsibility is to stand between the accused and a potentially arbitrary or abusive Government that is in command of the criminal sanction. For this reason, a trial judge is prohibited from entering a judgment of conviction or directing the jury to come forward with such a verdict, see Sparf & Hansen v. United States, 156 U.S. 51, 105 [15 S.Ct. 273, 294, 39 L.Ed. 343] (1895); Carpenters v. United States, 330 U.S. 395, 408, [67 S.Ct. 775, 782, 91 L.Ed. 973] (1947), regardless of how overwhelmingly the evidence may point in that direction. The trial judge is thereby barred from attempting to override or interfere with the jurors' independent judgment in a manner contrary to the interests of the accused.

Such a limitation on the role of a trial judge, however, has never inhibited his

7. The power could conceivably be viewed as an exercise of absolute trial court "discretion," which as Professor Rosenberg has noted, essentially involves a conferred power to be wrong, to err, in the view of an appellate court without incurring reversal. Rosenberg, Appellate Review of Trial Court Discretion, 79 F.R.D. 173, 176. This power to err however is ordinarily limited by the abuse standard of appellate review applicable to appealable discretionary decisions. Discretion would of course be absolute if nonreviewable either because nonappealable or because of a standard of complete deference in review. Eminent commentators have in fact suggested that the post-verdict power to acquit should be viewed as an exercise of discretion, made absolute by such a standard of deference. 15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters, § 3919 at 229 & n.96.24 (1979 Pocket Part). This flies in the face, however, of the fact that trial judges do not consider, and should not be led to consider, that in assessing the sufficiency of evidence they are free of the constraint of the Jackson-Sherman legal standard. Just as juries are instructed to follow the law and are not told that they nonetheless possess a power of nulli-

fication based upon the nonappealability of their verdicts, so trial judges must continue to consider themselves under legal constraint in directing acquittals notwithstanding the reality that, for systemic reasons, they too have practical nullification power. This, we think, is all that is implied by the Supreme Court's observations in Jackson, and in Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) that the standard to be applied by trial judges is the same as that applied by appellate courts when the latter are reviewing, as in both those cases, denials of motions to acquit.

8. That of the trial judge, by his inability to direct verdicts of guilty; that of appellate courts, by the nonappealability of jury verdicts of acquittal; that of the jury, by the defendant's right to have reviewed the legal sufficiency of the evidence to convict.

9. That of the trial judge, because of the nonappealability of his fact-based judgments of acquittal; that of the appellate courts, because of the finality of their determinations of insufficiency of evidence; that of the jury, because of the nonappealability of verdicts of acquittal.

ruling *in favor of a criminal defendant. Fong Foo v. United States,* 369 U.S. 141, [82 S.Ct. 671, 7 L.Ed.2d 629] (1962), establishing the binding nature of a directed verdict, is dispositive on that point. [Emphasis supplied].

From this it is obvious that different standards of review of post-verdict acquittals are necessary to preserve this fundamental allocation of protective powers, an allocation marked throughout by asymmetry.

Neither does according absolute deference to the trial judge's evidence assessments in this context make empty the government's right of appeal under the Act. Deference extends only to purely factual assessments that the evidence was insufficient to convict. This leaves open for review the preliminary question whether this was indeed the basis for the acquittal. If it is determined that it was not, the revealed basis will then be subject to free review and to correction by reinstatement of the verdict if prejudicial error is found in it.

The review function thereby preserved is by no means an inconsiderable one. As Justice Brennan has pointed out, application of the test of appealability of pre-verdict dismissals adopted in *United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65, turning as it does upon the question whether the dismissal was based upon purely factual assessments of insufficiency of the evidence to convict or upon grounds "unrelated to factual guilt or innocence," will frequently be a difficult one. 437 U.S.

at 110–16, 98 S.Ct. at 2203–06 (Brennan J., dissenting). Because we consider that the same test should apply to determine the scope of absolute deference in review of post-verdict acquittals [10] the task of review may be equally difficult. *Cf. United States v. Burroughs,* 564 F.2d 1111 (4th Cir. 1977). For review purposes it will of course be made easier by trial court specification of the exact basis of decision. Where no basis is specified or is implicit in the record we think it appropriate to assume upon appeal that the basis was factual insufficiency.[11]

■ We accordingly hold that on appeal by the government from a post-verdict judgment of acquittal our review is limited to consideration of any errors of law other than assessments of the sufficiency of the evidence to convict [12] that can be demonstrated by the government to have been the basis for the acquittal. To the extent the acquittal is based solely upon the trial court's assessment that the evidence was insufficient to support a conviction, we will defer to that assessment. In this connection, the burden is upon the government to show that the basis of acquittal is other than insufficiency of evidence. In the absence of a specification of other grounds by the court or a plain implication of other grounds in the record, we will assume that the basis was insufficiency of the evidence.

## IV

■ Applying these principles of review to the instant appeal, we have no difficulty

---

10. As indicated in text, we believe that making the scope of deference in review of post-verdict acquittals perfectly congruent with the scope of nonappealability of pre-verdict dismissals is necessary to preserve the integrity of the trial judge's protective powers in the general division of powers. Since the scope of appealability is now constitutionally controlled, the scope of deference in review must follow the constitutional developments with respect to appealability.

11. Since it is in the Government's interest to have corrected for precedential as well as for immediately corrective purposes any misapprehension of legal principle underlying an acquittal, it seems reasonable to impose upon it the burden of seeking to have any such specific basis of decision made a matter of record. While we realize that no means exists to com-

pel specification, we are satisfied that district judges will faithfully recognize the government's entitlement and our need for purposes of fair review.

12. Our decision has of course faithfully recognized throughout that the question of evidence sufficiency is—though "factual" in nature—conceptually one "of law," involving application of the *Jackson-Sherman* legal standard. *See* note 7 *supra.* It is therefore necessary to describe the scope of review as running only to *other* errors of law. As freely conceded, *see id.,* the deference thereby accorded to trial judges in the post-verdict setting is exactly that accorded in the pre-verdict setting—the power to "err" in applying the legal standard without incurring reversal by an appellate court.

in determining preliminarily that the basis of the acquittal here was the trial judge's assessment that the evidence was insufficient to convict. As earlier indicated, he plainly so stated for the record, adding that he had anticipated a verdict of not guilty. Applying our standard of deference to that assessment, we therefore affirm the judgment of acquittal.

*AFFIRMED.*

WIDENER, Circuit Judge, concurring:

While I concur in the reasoning of the court as well as in the result obtained, I have one reservation.

So far as our opinion may be said to equate the standard for sufficiency of evidence necessary to sustain the conviction in *Jackson* with that announced by this court in *Sherman*, as the present opinion construes *Sherman*, I think it unnecessarily discusses a matter acknowledged by the opinion to be not before us. While it is true that in *Sherman*, p. 199, we did use remarkably similar language to that later used in *Jackson*, we also copied, in the same paragraph, *in haec verba*, the language from *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), which we cited. I do not equate the *Jackson* standard, reviewing the sufficiency of evidence to sustain a State conviction when tested by habeas corpus, with the *Glasser* standard, when a conviction in a federal court is upon direct review. The *Glasser* standard is: "The verdict of the jury must be sustained if there is substantial evidence, taking the view most favorable to the government, to support it." *Glasser* p. 80, 62 S.Ct. at 469.

While the *Glasser* standard, of course, would be subject to the *Jackson* constitutional limitation, nevertheless the *Glasser* standard should be construed to give a federal appellate court more leeway in reviewing the sufficiency of the evidence on appeal from a conviction in a federal district court than it has in reviewing the sufficiency of the evidence of a conviction in a State court by way of habeas corpus. That same difference, of course, would at the very least not lessen the power of the district court in reviewing a verdict of guilty. So, if the *Glasser* standard is valid, as I think it is, for it has not been overruled, it would serve to further bulwark the judgment of the district court appealed from.