**UNITED STATES of America,
Appellant,**

v.

**Larry A. CAMPBELL.**

No. 81-1757.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 15, 1982.
Decided March 15, 1983.

E. Anne McKinsey, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., John A. Terry, Asst. U.S. Atty., Washington, D.C., at the time the brief was filed, John P. Hume, Carol E. Bruce and William J. Birney, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellant.

Arnold M. Weiner, Baltimore, Md., with whom John R. Dugan, Washington, D.C., was on the brief, for appellee.

Before TAMM, MIKVA and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

This case involves review of a district court's post-verdict judgment of acquittal. In March 1981, a jury found Larry Campbell guilty of giving an illegal gratuity in violation of 18 U.S.C. § 201(f) (1976). Three months later, however, the trial judge granted Campbell's post-verdict motion for acquittal; in the court's view, there was insufficient evidence upon which a reasonable juror could conclude beyond a reasonable doubt that Campbell was guilty of giving the illegal gratuity for which he was convicted. In light of our review of the record in this case, and in accordance with the principles of appellate review of such motions articulated by this court today in *United States v. Singleton*, 702 F.2d 1182 (D.C.Cir.1983) (en banc) (per curiam), we affirm the district court.

## I. BACKGROUND

Excavation Construction, Inc. (ECI) and its co-founder, Larry Campbell, were indicted in 1980 in connection with the alleged bribery of Judge Robert H. Campbell (no relation to the appellant) of the District of Columbia Superior Court. These indictments were based on allegations of a scheme in which Judge Campbell would leniently review ECI's traffic tickets in ex-

change for cash and in-kind payments. The scheme purportedly stemmed from ECI's operation of approximately eighty dump-trucks, used by the company in its construction of Metro subway stations, and subject to the vehicle weight restrictions of the District of Columbia. Although ECI was ticketed repeatedly for violation of the District's weight restrictions, in over ninety percent of the 1,138 tickets involving ECI that were considered by Judge Campbell, sentence was suspended.

ECI, Judge Campbell, and Larry Campbell were charged in a four-count indictment alleging conspiracies in violation of 18 U.S.C. § 1962(d) (1976) (RICO) and 18 U.S.C. § 371 (1976), and the giving and receiving of bribes in violation of 18 U.S.C. §§ 201(b)–201(c) (1976). The indictment alleged sixteen separate instances of bribery: twelve cash payments and four non-cash gifts. The gifts included a garden cultivator, several cases of liquor, three loads of topsoil, and a move of Judge Campbell's household belongings. By the time the case went to the jury, however, the bribery scheme alleged in the indictment had been confined to five cash payments and the move of household goods.

The trial judge instructed the jury on the lesser-included bribery offense of giving and receiving an illegal gratuity, but denied Larry Campbell's request that the jury be instructed that the guilt or innocence of each defendant be considered separately. After four days of deliberation, the jury acquitted all defendants on both conspiracy counts. By way of a special verdict form, the jury also acquitted the defendants of bribery, and found that there was no illegal gratuity given or received in connection with any of the five cash payments alleged. But the jury did find each defendant guilty in connection with the move of Judge Campbell's household belongings—ECI and Larry Campbell for giving that illegal gratuity, and Judge Campbell for receiving it.

The trial court sentenced ECI and Judge Campbell for the giving and receiving of the household move, and we affirmed their convictions and sentences in *United States*

*v. Campbell,* 684 F.2d 141 (D.C.Cir.1982). The trial court, however, granted Larry Campbell's post-verdict motion for judgment of acquittal under Rule 29(c) of the Federal Rules of Criminal Procedure. Rule 29(c) allows a criminal defendant to move the trial court to set aside the jury's verdict of guilty when the verdict is unsupported by legally sufficient evidence. *See* Fed.R. Crim.P. 29(a)–(c). In the present case, the trial judge granted Larry Campbell's Rule 29(c) motion and the Government appeals from the district court's order.

## II. ANALYSIS

Government appeals from judgments granting acquittal after the verdict under Rule 29(c) are a relatively new phenomenon, stemming from a 1970 amendment to the Criminal Appeals Act, 18 U.S.C. § 3731 (1976). Although the Supreme Court has heretofore approved this practice only when the acquittals after verdict were based on other legal grounds, *see, e.g., United States v. Wilson,* 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975), the courts of appeals have extended this appellate review to findings of evidentiary insufficiency as well. *See, e.g., United States v. Steed,* 674 F.2d 284, 285–286 (4th Cir.1982) (en banc); *United States v. Blasco,* 581 F.2d 681, 683 (7th Cir.), *cert. denied,* 439 U.S. 966, 99 S.Ct. 456, 58 L.Ed.2d 425 (1978).

The standard to be applied by an appellate court in reviewing a post-verdict judgment of acquittal is the same as that applied by the trial court. Both courts must view the evidence in the light most favorable to the verdict, and must presume that the jury has properly carried out its functions of evaluating the credibility of witnesses, finding the facts, and drawing justifiable inferences. A verdict will be overruled only if no reasonable juror could accept the evidence as sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt. *See United States v. Staten,* 581 F.2d 878, 882 (D.C.Cir. 1978); *Curley v. United States,* 160 F.2d 229 (D.C.Cir.), *cert. denied,* 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947). Applying

this standard to the facts of this case, the Government argues that the record contains sufficient evidence to convict Larry Campbell as an aider and abettor in the giving of an illegal gratuity (the move of household goods) to Judge Campbell. We disagree—the record contains no such evidence.

In order to aid and abet the commission of an offense, a defendant must "associate himself" with it, must "participate in it as in something that he wishes to bring about," and must "seek by his action to make it succeed." *Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949). Although an aider and abettor "need not perform the substantive offense, . . . need not know its details, . . . and need not even be present . . . .," *United States v. Sampol,* 636 F.2d 621, 676 (D.C.Cir.1980) (citations omitted), it must be proven "that the defendant consciously assisted the commission of the specific crime in some active way." *United States v. Dickerson,* 508 F.2d 1216, 1218 (2d Cir.1975). Although constrained by the strict standard under which a trial judge can test the legal sufficiency of the evidence, the district court applied the standard for aiding and abetting to the facts in this case and granted Larry Campbell's post-verdict motion for acquittal:

> Based on the record in this case there was no evidence to convict the defendant Larry A. Campbell as an aider and abettor in the giving of an illegal gratuity to Judge Campbell. . . .

> \*   \*   \*   \*   \*   \*

> A review of the evidence against Larry A. Campbell convinces this court that there was insufficient evidence upon which a reasonable mind could fairly conclude guilt beyond a reasonable doubt on the offense for which Larry A. Campbell was convicted.

Memorandum and Order at 2–3, *reprinted in* Joint Appendix at 138–39. Our review of the record in this case confirms the conclusion of the district court.

Nothing in the record links Larry Campbell to the household move. Instead, the evidence concerning the move of Judge Campbell's belongings revolves entirely around Robert Jenkins, ECI's assistant general manager, who had responsibility for supervision of the ECI truck fleet. Jenkins was solely responsible for arranging the household move: the subject came up when Jenkins was at Judge Campbell's house, Jenkins rented the truck used during the move, and Jenkins paid the ECI employees who were assigned to do the moving. *United States v. Campbell,* 684 F.2d at 146 n. 6. Neither direct nor circumstantial evidence suggests that Larry Campbell acted as one who "aids, abets, counsels, commands, induces or procures," or as one who otherwise willfully caused, the improprieties committed by ECI, within the meaning of 18 U.S.C. § 2 (1976). Even though Larry Campbell had co-founded the company, Jenkins for some time had exercised an unquestioned authority to withdraw funds from ECI on the representation that they would be used for business and travel expenses. And although the corporate accounting for these outlays was lax, there was no proof that Larry Campbell affirmatively encouraged Jenkins to use these funds for gifts to Judge Campbell. *See* Transcript (Tr.) 2076–77 (Larry Campbell ceased to have major responsibilities over ECI's day-to-day financial transactions in 1976). Generally, the record indicates that Jenkins was not closely supervised in his day-to-day control of ECI business operations and that Larry Campbell was involved in the field operations of a number of companies besides ECI.

Jenkins, on whose testimony the government principally relied, testified that he first met Judge Campbell in 1970 at a meeting between representatives of a trucking association and law enforcement personnel, and that Larry Campbell attended the same meeting. Tr. 890–94, 945. Except for that one occasion, however, Jenkins never saw Larry Campbell and Judge Campbell in each other's presence. Tr. 945–46, 1286.

Nor could any other witness say that Larry Campbell had been with Judge Campbell at other occasions. *E.g.,* Tr. 4121 (testimony of Judge Campbell's law clerk); Tr. 1771, 1988–90 (testimony of Judge Campbell's secretary from 1967–1979). Jenkins did testify that when Judge Campbell first requested a "loan" in 1970, Jenkins cleared the request with Larry Campbell. He added, however, that Larry Campbell said, "Let him have it but get a note signed for it." Tr. 952. Jenkins testified that he made the arrangements for the loan without additional consultation with Larry Campbell, Tr. 955, and that he kept Judge Campbell's note locked in a desk drawer for five years, until Judge Campbell asked that it be returned. Tr. 964. Jenkins also stated that Larry Campbell was neither consulted about the return of the note nor informed that it had taken place. Tr. 965. Thus, Jenkins refused to connect Larry Campbell with any of Jenkins' other dealings with Judge Campbell.

Jenkins' testimony concerning the move is especially relevant. Jenkins stated that he had received no instructions from Larry Campbell, but rather had acted on his own. He also testified that he had consistently told the prosecutors that Larry Campbell played no role in the move or in any of the other gifts that Jenkins gave to Judge Campbell. Moreover, during the trial, he reaffirmed his earlier statements:

Q: And you have never said anything to contradict that; have you?

A: No.

Q: And you have never come back and said that wasn't so; have you?

A: No.

Q: And as a matter of fact, in all of those items you did act entirely on your own; didn't you?

A: Yes.

Q: And, as to any of those, it is a fact, isn't it, sir, you received no instructions from either Larry Campbell or Jack Lyon?

A: That is correct.

Tr. 1285–86.

Admittedly, the prosecution could argue from some circumstantial evidence that Larry Campbell may have acquiesced in a scheme of corporate bribery. But that argument, as to the conspiracy or bribery counts of the indictment, has been forever silenced by the jury's voice. On the illegal gratuity charge, there is simply no evidentiary basis upon which this theoretical argument can sustain Larry Campbell's conviction as an aider and abettor of the move of Judge Campbell's household goods. As the district court observed: "[T]here was insufficient evidence upon which a reasonable mind could fairly conclude guilt beyond a reasonable doubt *on the offense for which Larry Campbell was convicted.*" Memorandum and Order at 3 (emphasis added).

The district court's assessment of the evidence in this case reflects the considered opinion of an expert trial judge who was intimately familiar with the evidence. Accordingly, his assessment deserves our consideration. This is not to say, of course, that we "defer" to the trial court's judgment, in the sense of abdicating our own responsibility to review the record. But, as the court has decided, "we may consider and be influenced by the opinion of the expert trial judge who has lived with the case—just as we give weight to one another's views." *Singleton,* at 1183. The district court's view of the evidence in this case buttresses our own conclusion that Larry Campbell's conviction was not supported by legally sufficient evidence.

CONCLUSION

There would be no constructive purpose served in speculating about how the jury reached its verdict from the evidence presented. The jury remains the best system yet devised for deciding disputed issues of fact in our criminal justice system. But there comes a point when the efforts of the laymen on the jury to mete out rough justice runs headlong up against the logical demands and procedural safeguards of the law:

[E]vidence might raise a question in a reasonable man's mind. But that is not enough. Guilt, according to a basic principle in our jurisprudence, must be established beyond a reasonable doubt. And, unless that result is possible on the evidence, the judge must not let the jury act; he must not let it act on what would necessarily be only surmise and conjecture, without evidence.

*Cooper v. United States*, 218 F.2d 39, 42 (D.C.Cir.1954). The trial court has a responsibility to the criminal justice system to grant a defendant's Rule 29(c) motion when the jury has no evidentiary basis for its action. We affirm the trial judge's judgment *non obstante veredicto* in this case.

*Affirmed.*