898 F.2d 149
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellant,
v.
Charlie William TURNER, Defendant-Appellee.
UNITED STATES of America, Plaintiff-Appellee,
v.
Otwa Lee TURNER, Defendant-Appellant.
 Nos. 88-5617, 88-5622.
 United States Court of Appeals, Fourth Circuit.
 Argued: Dec. 7, 1989.
Decided: March 6, 1990.
 
 Appeals from the United States District Court for the Western District of Virginia, at Danville. Jackson L. Kiser, District Judge. (CR-87-103-D)
 No. 88-5617: Argued: Jean Martel Barrett, Assistant United States Attorney, Roanoke, Va., for appellant.
 James David Jones, Chatham, Va., for appellee.
 On Brief: John P. Alderman, United States Attorney, Roanoke, Va., for appellant.
 No. 88-5622: Argued: James Patterson Rogers, III, Danville, Va., for appellant.
 Jean Martel Barrett, Assistant United States Attorney, Roanoke, Va., for appellee.
 On Brief: John P. Alderman, United States Attorney, Roanoke, Va., for appellee.
 W.D.Va.
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 Before MURNAGHAN and CHAPMAN, Circuit Judges, and JAMES H. MICHAEL, Jr., United States District Judge for the Western District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Following a seven-day jury trial, Otwa Lee Turner (O.L. Turner) was found guilty on 12 counts of a 13-count indictment, and his brother Charlie William Turner (C.W. Turner) was found guilty on 10 counts (1, 3-9, 11 and 13) under the same indictment. Thereafter, the trial judge granted a motion of acquittal as to C.W. Turner's convictions and denied a similar motion of O.L. Turner. The government appeals the granting of C.W. Turner's motion of acquittal, and O.L. Turner appeals the denial of his acquittal motion. We find that the evidence was sufficient to sustain the convictions of C.W. Turner on Counts 1, 7 and 11, and we find sufficient evidence to sustain all of the convictions of O.L. Turner. Therefore, we affirm all convictions of O.L. Turner, and we reverse and reinstate the convictions of C.W. Turner as to Counts 1, 7 and 11, and we remand for sentencing.
 
 
 2
 * O.L. Turner and C.W. Turner were indicted with Linda M. Overton, Mary Jane Anderson and Piedmont Ambulance Service of Danville, Inc. on charges of conspiracy and substantive acts of fraud in connection with the use of ambulances to transport Medicare and Medicaid patients and the billing and collection of charges made therefor. In 1977 O.L. Turner purchased the ambulance contract from the City of Danville, Virginia, and this provided him with an exclusive franchise to operate an ambulance service within the city. At the time, O.L. Turner operated Yellow Cab in the City of Danville. In March 1981, O.L. Turner entered into contracts with Medicaid and Medicare programs to become a provider of ambulance services for both programs. The ambulance business was incorporated under the name of Piedmont Ambulance Service of Danville, Inc. and O.L. Turner was president and his brother C.W. Turner was secretary-treasurer.
 
 
 3
 The ambulance service operated continuously from 1977 until it went out of business in 1987. From January 1981 through April 1985 the evidence shows that the defendants devised and implemented a scheme of over billing for the ambulance services. Included in this scheme were claims for services that were not provided, double billing Medicare and Medicaid when payment was due under only one of the programs, inflating mileage figures so as to receive larger payments, and unlawfully billing patients for services covered by Medicaid. Mileage figures were inflated by using a billing code of 006 for one way trips and 012 for round trips, instead of using and recording the actual mileage as Medicare requires. The prosecution claimed that over the period of four years Medicare was fraudulently induced to overpay in excess of $21,000 for these ambulance services and that Medicaid overpaid in excess of $3,900 for such services.
 
 
 4
 Prior to beginning work for Piedmont Ambulance Service of Danville, Inc., C.W. Turner was employed at a supermarket. In October 1981 he became certified as an emergency medical technician and thereafter began part-time employment with Piedmont. He became a full-time employee in July 1984 and was employed by Piedmont until June 1985. He claims that he was simply a medical technician and had nothing to do with the billing or record keeping. In granting his motion for acquittal, the trial court found:
 
 
 5
 It is clear even from Charlie's own testimony that he was knowledgeable about billing procedures. Apparently, he offered advice to some of the billing clerks on how to handle certain billing problems. But the testimony of the clerks that Charlie showed them how to double bill and use the "codes," is insufficiently corroborated by any other evidence, such as his own use of the codes, his own efforts to double bill, or evidence that he had any particular authority or responsibility in the billing area.
 
 II
 
 6
 On review, both appeals are subject to the same standard, because each requires a review of the sufficiency of the evidence to convict. In No. 88-5617, the government claims that the evidence was sufficient to convict C.W. Turner, and in No. 88-5622, O.L. Turner claims that the evidence was not sufficient to convict him. In United States v. Steed, 674 F.2d 284, 286 (4th Cir.) (en banc), cert. denied, 459 U.S. 829 (1982), we stated:
 
 
 7
 The proper standard of review is enunciated in Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942): "The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." This is the familiar standard for review of a defendant's claim that the evidence is insufficient to sustain the jury's verdict of guilty. Whether the assessment of the evidence is at the behest of the government or the defendant, the function of the reviewing court is unchanged and consequently the same standard of review is appropriate.
 
 
 8
 The trial judge granted the motion of acquittal, and found that although C.W. Turner was knowledgeable about billing procedures and offered advice to some billing clerks on how to handle certain billing problems, the testimony of the clerks that he showed them how to double bill and use codes was not sufficiently corroborated by other evidence "such as his own use of the codes, his own efforts to double bill, or other evidence that he had any particular authority or responsibility in the billing area."
 
 
 9
 In United States v. Arrington, 719 F.2d, 701, 705 (4th Cir.1983), cert. denied, 465 U.S. 1028 (1984), we stated:
 
 
 10
 The uncorroborated testimony of one witness may be sufficient to sustain a verdict of guilty. United States v. Shipp, 409 F.2d 33 (4th Cir.), cert. denied, 396 U.S. 864, 90 S.Ct. 140, 24 L.Ed.2d 117 (1969). Whether it is sufficient, of course, depends on the probative force of the actual testimony.
 
 
 11
 (Footnote omitted.)
 
 
 12
 In the present case there is the testimony of four billing clerks who worked for Piedmont, and this testimony clearly reflects that C.W. Turner taught them, or assisted in teaching them, how to file fraudulent claims. Carolyn Hunt worked for Piedmont in 1984 as a bookkeeper and secretary, and she testified that C.W. Turner and Mary Jane Anderson taught her to bill Medicare and Medicaid for ambulance services, and instructed her that all in town one-way trips were six miles and all in town round-trips were twelve miles, regardless of the actual mileage, and that trips to the hospital for x-ray or cobalt treatments were to be listed as emergencies. She testified that claims were often made against both Medicaid and Medicare for the same services upon the instructions of C.W. Turner.
 
 
 13
 Margie Terry worked for Piedmont in November 1984 as a billing clerk, and she testified that she was instructed by C.W. Turner and others to fill out all in town one-way trips as six miles and all in town round trips as twelve miles. She also testified that when she had questions about billing procedures she asked C.W. Turner, who was knowledgeable in these procedures. Kimberly Terry testified that she worked in late 1984 and early 1985 as a filing clerk and was instructed by C.W. Turner in billing procedures and about the mileage figures to be used for one-way in town and round trip in town use of Piedmont ambulances and the codes for mileage used. She testified that C.W. Turner told her what to do. There was also the testimony of Caroline Robertson that when she came to work C.W. Turner was the only one working with the billing of Piedmont and that he did the actual billing and that she was aware that patients were being billed for ambulance services after claims had been made against Medicare. She also testified that as a rule overpayments were not returned. The probative force of these four women, who had direct contact with C.W. Turner and with the billing process, is sufficient to prove some of the charges against him without proof of his handwriting or that he actually prepared the bills.
 
 
 14
 The first count in the indictment charges a conspiracy among the defendants to violate the mail fraud statute by the use of a scheme to file fraudulent claims with Medicare and Medicaid. The essential elements required for a conviction are the proof beyond a reasonable doubt of an agreement to engage in the fraudulent act, a defendant's knowing participation, and the commission of an overt act by one of the conspirators in furtherance of the conspiracy.
 
 
 15
 The evidence presented is sufficient to show that there was an agreement between and among the various defendants to use the mails in carrying out their scheme of filing fraudulent claims for use of ambulances. The evidence is also sufficient to show that C.W. Turner knowingly participated in the scheme by instructing various clerks as to how to over bill, double bill and not return overpayments. The evidence of overt acts was continuous and overwhelming.
 
 
 16
 The elements of a defendant's knowledge and participation in the conspiracy may be proved by circumstantial evidence, but here there is direct evidence from the billing clerks of C.W. Turner's direct participation.
 
 
 17
 C.W. Turner claims that the evidence does not connect him with any of the specific acts set forth in Counts 2 through 13, because none of the government witnesses could testify that he personally participated in the preparation, filing or mailing of any of the papers, documents or forms that make up these claims. C.W. Turner was found not guilty on Count 2, but guilty on Counts 3 through 7, for acts between February 24, 1984, and March 8, 1985, that involved the filing of false claims and the receipt of checks through the mail for ambulance services. C.W. Turner is charged with being an aider and abettor under 18 U.S.C. Sec. 2, which provides:
 
 
 18
 (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
 
 
 19
 (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.
 
 
 20
 To convict for aiding and abetting, participation in every stage of an illegal activity is not required. It is only necessary to show participation at some stage accompanied by knowledge of the result and the intent to bring about that result. United States v. Arrington, 719 F.2d at 705.
 
 
 21
 The evidence establishes that C.W. Turner knew that fraudulent claims were being filed, and he instructed some of the clerks in how to file them with the intent that they be filed and that overpayment to Piedmont result. However, as to Counts 3 and 4 which involved mail received on July 13 and 20, 1984, the evidence does not reflect that any of the clerks trained or instructed by C.W. Turner were employed at the time that the claims, resulting in these payments, were filed.
 
 
 22
 Counts 5 and 6 involve dates either before the clerks trained by C.W. Turner were employed or after all of such clerks had left the employment of Piedmont Ambulance. As a result, there was not sufficient evidence to support a finding of guilt on Counts 3, 4, 5, and 6, and the trial judge correctly granted a judgment of acquittal on these counts.
 
 
 23
 Counts 8 and 9 charged C.W. Turner with aiding and abetting in the filing of claims for ambulance services that were not provided. The clerks trained by this defendant did not testify that he trained or instructed them to submit fictitious or nonexistent claims, and the prosecutor conceded before the trial court, at the hearing on the motion for judgment of acquittal, that none of the clerks who testified were found to have submitted a claim for services that were never provided and none of them claimed to have been instructed to do so. The judgment of acquittal as to Counts 8 and 9 is affirmed.
 
 
 24
 In Counts 11 and 13 C.W. Turner is again charged as an aider and abettor in connection with charging state Medicaid patients for ambulance services at a rate in excess of the rates established and allowed by the Commonwealth of Virginia, and with collecting these excessive fees from such Medicaid patients. The jury was charged that the government must prove that the defendants charged or attempted to charge Medicaid patients for these services, that the defendants collected and/or attempted to collect excessive fees from Medicare patients, that the defendants acted knowingly and willfully and that the Virginia Medicaid plan was approved by the Social Security Act. Again the charges were made by the billing clerks, but Count 13 covers a charge of April 10, 1985, which was after all of the clerks trained by C.W. Turner had left the employ of Piedmont. The evidence as to Count 13 was not sufficient and judgment of acquittal as to Count 13 is affirmed.
 
 
 25
 As to C.W. Turner, we find the evidence was sufficient to convict him of conspiracy under Count 1 and as an aider and abettor under Counts 7 and 11. The evidence of his part in the conspiracy was more than sufficient, and Counts 7 and 11 were proved by the testimony of clerks who had been trained by him and were employed by the ambulance company on the dates of the acts alleged.
 
 III
 
 26
 O.L. Turner was convicted of all thirteen counts in the indictment and he appeals claiming that there was not sufficient evidence to support any of the convictions. Count 1 charges conspiracy and we have heretofore set forth the evidence in support of the agreement to use the mails to defraud. The issue now is whether the prosecution proved O.L. Turner was a knowing participant in the conspiracy. He claims that he did not participate in the day-to-day activities of the business, did not handle the billing, did not instruct or supervise employees in the preparation of bills, and was unaware of any scheme to overcharge or defraud Medicaid or Medicare.
 
 
 27
 There was testimony of Medicaid employees that they had discussed basic rules of billing with O.L. Turner and had brought to his attention instances of double mileage figures on Piedmont trip sheets for one-way trips, and that O.L. Turner seemed familiar with Medicaid procedures and the procedures being used by his billing clerks. A financial investigator for Blue Cross Blue Shield testified as to mileage figures which were inflated and caused an overpayment of $16,780, and of a conversation with O.L. Turner in which he acknowledged that he had been paid more than he should have been paid. Various billing clerks testified as to O.L. Turner's operation of his business, the fact that he knew everything that was going on, that he handled all incoming mail and checks, that he checked their work, that he had instructed some of them how to fill out adjustment forms, that he knew of people paying on a Medicaid account for which they were not responsible, that one of the ambulance drivers was instructed by O.L. Turner as to how to fill out trip sheets, that he allowed clerks to sign his name on various forms, including Medicare payment forms, that he stated that he knew everything about the business and could run it alone. There was also the testimony of Kimberly Terry that she realized the billing practices were wrong and she decided to quit her job. When she told both C.W. Turner and O.L. Turner that what they were doing was not right, they told her she could leave. All of this testimony was indicative of O.L. Turner's participation in the business and his knowledge of how the bills to Medicaid and Medicare were being prepared. This evidence will support a jury's finding that O.L. Turner was a knowing and willful participant in the conspiracy at times when overt acts were being committed in furtherance of the conspiracy.
 
 
 28
 We find no merit to this appellant's claim that there was not sufficient evidence to support the conviction in Count 6. It involves a question of credibility as to the correct mileage traveled to transport one Feefie Fisher.
 
 
 29
 O.L. Turner claims that he cannot be guilty under Counts 11 and 13 because the other defendants were found not guilty. Since he could only be held as an aider or an abettor and there was no one to aid and abet because of the other acquittals, he argued that he may not be held. Counts 11 and 13 charged O.L. Turner, C.W. Turner, Linda M. Overton, Mary Jane Anderson and Piedmont Ambulance Service of Danville, Inc. with willfully charging ambulance fees at a rate in excess of the rates established and allowed by the Commonwealth of Virginia for Medicaid recipients. The charges against Anderson were dismissed and the jury found Linda M. Overton not guilty on both counts and O.L. Turner, C.W. Turner and Piedmont guilty on both counts. Although the trial judge acquitted C.W. Turner on Counts 11 and 13, we have reversed and reinstated the guilty verdict against C.W. Turner as to Count 11. The evidence was sufficient to show O.L. Turner participated as a principal in connection with the offenses stated in Count 11 and 13. The overpayment in Counts 11 and 13 are for illegally charging Medicaid recipients for waiting time by Piedmont ambulances. O.L. Turner claimed that these charges for waiting resulted from his misunderstanding of a letter of explanation he had received from a program director of the Virginia Department of Health. This claim of alleged misunderstanding was by way of a defense to the necessary element of intent. It was considered and rejected by the jury. After considering the language of the letter, we can understand why the jury would find no ground for misunderstanding or confusion of the rule forbidding charges for waiting time to Medicaid patients.
 
 
 30
 The judgment of conviction of O.L. Turner is affirmed. The district court's judgment of acquittal for C.W. Turner is reversed as to Counts 1, 7 and 11, and the case is remanded to the district court with directions to reinstate the judgment of conviction on Counts 1, 7, and 11 and to sentence C.W. Turner.
 
 
 31
 No. 88-5622 IS AFFIRMED.
 
 
 32
 No. 88-5617 IS AFFIRMED IN PART, REVERSED IN PART AND REMANDED.