**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.                                                    No. 98-4466

ADHIAMO MITCHELL,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, District Judge.
(CR-98-57)

Argued: April 9, 1999

Decided: May 20, 1999

Before HAMILTON, MOTZ, and TRAXLER, Circuit Judges.

_____

Reversed and remanded by published opinion. Judge Motz wrote the
opinion, in which Judge Hamilton and Judge Traxler joined.

_____

**COUNSEL**

**ARGUED:** Michael Cornell Wallace, Sr., Assistant United States
Attorney, Richmond, Virginia, for Appellant. Keith Nelson Hurley,
CAWTHORN, PICKARD & ROWE, P.C., Richmond, Virginia, for
Appellee. **ON BRIEF:** Helen F. Fahey, United States Attorney,
James B. Comey, Assistant United States Attorney, Richmond, Vir-
ginia, for Appellant.

_____

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

After a jury found Adhiamo Mitchell guilty of harboring and concealing a fugitive, the district court concluded that the Government had failed to prove that he had engaged in any affirmative act of harboring and so granted his motion for a judgment of acquittal. Because the Government put forth evidence from which a rational jury could conclude that Mitchell committed an affirmative act of harboring, the evidence was sufficient to support his conviction. Accordingly, we reverse the judgment of acquittal and remand for reinstatement of the verdict and entry of judgment against Mitchell.

I.

In 1998, Eric Jeter was wanted for conspiracy to commit a bank robbery in New York. During January of that year, Jeter stayed at a Richmond apartment that was rented to Denis Somerville and his sister Tasha. Some time in January, Mitchell, accompanied by Jeter's girlfriend, Tiesha, traveled from New York to that same Richmond apartment.

On January 22, six law enforcement officers, including FBI agents and local policemen, went to the Richmond apartment. FBI agents Charles Sell and Robert Heinzman knocked on the door. Mitchell, who testified on his own behalf, stated that on the day the officers came to the apartment he had been living in the apartment for three or four days. Mitchell recounted that when the agents knocked, he had been dozing on the couch and was sick and under the influence of cold medicine. In response to the knocking, Mitchell opened the front door part way and remained behind the door. Agent Sell informed Mitchell that the agents were looking for a person named Eric Jeter and showed Mitchell a photograph of Jeter. Mitchell told Agent Sell that he was alone in the apartment and that he did not know Eric Jeter. (Mitchell testified at trial that Jeter had numerous nicknames and aliases and that he did not know Jeter as Jeter, but Mitchell admitted that he lied to the agents when he told them he was alone and did not know the person in the picture). Agent Sell, with his gun at his side, asked permission to enter the apartment. Mitchell denied access

unless Agent Sell produced a warrant. Agent Sell then asked one of the other agents to retrieve the warrant from the car.

In the meantime, another agent radioed the officers that he saw an arm "peeling the blinds down at a window" in the rear of the house. In response, five or six officers charged the door. Agent Sell testified that Mitchell attempted to push the door closed, and the officers over-powered him in two or three seconds. Sell recalled Mitchell yelling as the officers attempted to enter. Mitchell testified that he "pushed the door back," resisting the officers's entry, because his foot got caught when the officers rushed the door. Subsequently, the police apprehended Jeter in the apartment and arrested both Jeter and Mitchell.

After consideration of this evidence, the jury found Mitchell guilty of harboring and concealing a fugitive in violation of 18 U.S.C.A. § 1071 (West 1976 and Supp. 1998). The defense then renewed its Rule 29 motion for acquittal. See Fed. R. Crim. P. 29. After briefing and argument, the district court granted the motion. The court properly recognized that "some affirmative action is required to harbor or conceal within the meaning of § 1071," and then found that in this case "the impetus for the force that was confronted began with the government," not Mitchell. For this reason, the court concluded that the Government had not proven that Mitchell took any affirmative act to harbor or conceal Jeter. The Government appeals.

II.

Initially, Mitchell contends that the Government lacks authority to pursue, and we lack jurisdiction to hear, this appeal. Mitchell maintains that 18 U.S.C.A. § 3731 (West 1985) provides the exclusive authority for appeals by the Government in criminal cases. Because that statute does not explicitly refer to an appeal from a judgment of acquittal after a jury verdict of conviction, he asserts that the Government lacks authority to appeal here.

The argument is without merit. Both the Supreme Court and this court have previously confronted, and squarely rejected, this claim. See United States v. Martin Linen Supply Co., 430 U.S. 564, 568 (1977) (in § 3731 "Congress intended to remove all statutory barriers

3

to Government appeals and to allow appeals whenever the Constitution would permit. . . . Therefore unless barred by the Double Jeopardy Clause . . . appeals by the Government from the judgments of acquittal . . . are authorized by § 3731.") (internal quotation marks omitted); United States v. Steed, 674 F.2d 284, 286 (4th Cir. 1982) (en banc) (same). Moreover, the "Double Jeopardy Clause does not bar a Government appeal from a ruling in favor of the defendant after a guilty verdict has been entered by the trier of fact." United States v. DiFrancesco, 449 U.S. 117, 130 (1980). This is so because "reversal on appeal would merely reinstate the jury's verdict, [so] review of such an order does not offend the policy against multiple prosecution." United States v. Wilson, 420 U.S. 332, 344-45 (1975).

Accordingly, we have jurisdiction to consider the Government's appeal and now turn to the question of the sufficiency of the evidence to sustain the conviction.

III.

When reviewing a district court's post-verdict judgment of acquittal, we must sustain the jury's verdict "if there is substantial evidence, taking the view most favorable to the Government, to support it." Steed, 674 F.2d at 286 (internal quotation marks and citation omitted).

The statute at issue here, 18 U.S.C.A. § 1071, punishes any person who

> harbors or conceals any person for whose arrest a warrant or process has been issued . . . so as to prevent his discovery and arrest, after notice or knowledge of the fact that a warrant or process has been issued for the apprehension of such person.

Conviction under this statute requires that the Government prove beyond a reasonable doubt that (1) a federal warrant has been issued for the fugitive's arrest, (2) the harborer had knowledge that a warrant had been issued for the fugitive's arrest, (3) the defendant actually harbored or concealed the fugitive, and (4) the defendant intended to prevent the fugitive's discovery or arrest. See United States v. Silva, 745 F.2d 840, 848 (4th Cir. 1984).

4

In its consideration of the motion for acquittal, the district court found that the Government presented evidence sufficient to satisfy the first, second, and fourth Silva elements. Specifically, as to the first two elements, the court held that once the Government presented undisputed evidence that the agents informed Mitchell that they possessed an arrest warrant for Jeter "a reasonable juror could have found that the defendant had knowledge that a warrant had been issued for the fugitive's arrest." With regard to the fourth element, the court found that a jury could have inferred from Mitchell's lie "about the presence of a man meeting the description of Jeter after having been shown a picture of Jeter" that Mitchell "intended to prevent the fugitive's discovery or arrest." Mitchell does not contest these findings. Only the third element -- whether the Government presented sufficient evidence that Mitchell actually harbored or concealed the fugitive -- is at issue here.

Section 1071 does not proscribe all forms of aid to a fugitive. See Silva, 745 F.2d at 849. A person does not actually harbor or conceal in violation of that statute merely by lying to the police about the whereabouts of a fugitive. See United States v. Lockhart, 956 F.2d 1418, 1423 (7th Cir. 1992); United States v. Magness, 456 F.2d 976 (9th Cir. 1972); United States v. Foy, 416 F.2d 940, 941 (7th Cir. 1969). Moreover, providing general financial assistance will not satisfy § 1071's requirement of actual harboring or concealment. See Silva, 745 F.2d at 849.

The actual harboring or concealment element requires some "affirmative, physical action" by the defendant. United States v. Lockhart, 956 F.2d 1418, 1423 (7th Cir. 1992). Generally, the Government must prove a "physical act of providing assistance, including food, shelter, and other assistance to aid the prisoner in avoiding detection and apprehension." Id. (citing United States v. Kutas, 542 F.2d 527, 528 (9th Cir. 1976)) (internal quotation marks omitted). For example, evidence that a defendant arranged for hotels and vehicles, see Stamps v. United States, 387 F.2d 993 (8th Cir. 1967), rented apartments and shopped for a fugitive, see United States v. Giampa, 290 F.2d 83 (2d Cir. 1961), or provided a fugitive with false identification, see United States v. Gros, 824 F.2d 1487 (6th Cir. 1987), has been held sufficient to support a conviction under the statute.

5

Similarly, closing the door on law enforcement officers who are attempting to apprehend a suspect is an "affirmative physical act of providing assistance" adequate to satisfy the requirement of § 1071. See United States v. Stacey, 896 F.2d 75 (5th Cir. 1990). In Stacey, the wife of a fugitive, who was hiding in the house, closed and locked the front door after she saw the police approaching. At trial, the jury found this conduct sufficient to meet the requirements of § 1071. Id. at 77. On appeal, Stacey argued that "the jury convicted her for closing the door on the officers, and that those actions cannot constitute harboring and concealing as a matter of law." Id. The Fifth Circuit upheld the conviction, reasoning that:

> Any physical act of providing assistance . . . to aid the prisoner in avoiding detection and apprehension will make out a violation of section 1071. Here, that physical act was closing and locking the front door of a house where a fugitive was hidden. And that is enough. Given that Stacey knew the officers and knew why they were driving by the house, her locking them out was enough to sustain a conviction for harboring.

Id. (internal quotation marks, citations, and footnotes omitted).

Mitchell does not assert that the Stacey analysis is faulty. Rather he claims that the "unrefuted" evidence at trial demonstrated that he "did not engage in any `active' conduct to harbor or conceal," but simply caught his foot in the door when the officers attempted to enter. Mitchell did indeed testify at trial that his foot was behind the door and that when the officers began pushing the door towards him, his foot got "caught in the door." He further stated that he began screaming "My foot is caught. My foot is caught." Agent Sell, however, testified that when the officers attempted to enter the apartment, Mitchell "physically resisted [the officers] by trying to push the door closed." According to Agent Sell, it took about two to three seconds to overpower Mitchell. Agent Sell recalled Mitchell yelling as the struggle was taking place, but the agent did not remember if Mitchell screamed anything in particular.

The district court believed that the testimony from all the witnesses -- the agents and Mitchell -- clearly demonstrated that the "impetus

6

of force" came from the officers storming the apartment, not from Mitchell shutting them out. What seemed to be resistance on Mitchell's part could be entirely explained by the fact that his foot was caught in the door. Mitchell's own testimony, however, belies this theory. Mitchell testified not just that his foot was caught in the door, but that as the officers tried to enter, he "was closing the door." In sum, Mitchell's contention that the "unrefuted" evidence demonstrated that his actions were passive "non-help" to the officers rather than active assistance to the fugitive is simply not borne out by the record.

The jury heard Mitchell's version of the events and the Government's; it apparently believed the Government's version. The Government presented evidence that Mitchell affirmatively tried to close the apartment door on the officers when they attempted to enter the building. Such actions clearly constitute an "affirmative physical action" intended to keep the officers out of the building and help the fugitive avoid apprehension, sufficient to meet the third Silva element.

IV.

Because, viewing the evidence in the light most favorable to the Government, sufficient evidence was presented from which a reasonable jury could have found Mitchell guilty beyond a reasonable doubt of harboring or concealing, we reverse the district court's judgment of acquittal and remand for reinstatement of the jury verdict and entry of judgment against Mitchell.

REVERSED AND REMANDED

7